# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DAWN R. EVANS,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:16-cv-622
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Dawn R. Evans, brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

(Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and

supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of

Errors (Doc.14), the Commissioner's response in opposition (Doc. 19), and plaintiff's reply

(Doc. 22).

## I. Procedural Background

Plaintiff protectively filed her applications for DIB and SSI in January 2013, alleging

disability since June 29, 2010, due to a neck injury/two herniated discs in her neck, carpal tunnel

syndrome, a hip injury, and arthritis. The applications were denied initially and upon

reconsideration. Plaintiff, through counsel, was afforded a *de novo* hearing before administrative

law judge (ALJ) Kevin Detherage on April 9, 2015. On June 3, 2015, the ALJ issued a decision

denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals

Council was denied, making the decision of the ALJ the final administrative decision of the

Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff met] the insured status requirements of the Social Security Act through December 31, 2012, but not thereafter.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since June 29, 2010, the alleged onset date (20 CFR 404.1571, *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: Cervical and lumbar spine degenerative disc disease, tight shoulder strain, carpal tunnel syndrome, depression, and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] had the residual functional capacity [("RFC")] to perform unskilled, sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except as follows: She can only occasionally stoop, kneel, crouch, or crawl; she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps or stairs; she should avoid exposure to hazards such as heights or machinery with moving parts; she can frequently rotate, flex, or extend the neck; she can frequently reach (including overhead) with the right upper extremity; and she can frequently handle and finger with the right upper extremity. She is limited to no production rate pace work. She is limited to only occasional changes in a routine work setting. The [plaintiff] is likely to be absent from work one day per month.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1971 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The [plaintiff] subsequently changed age category to a younger individual age 45-49. (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 29, 2010, through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 20-31).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[1]Plaintiff's past relevant work was as a bartender, a light semi-skilled position; a tutor, a light, skilled position; a manager, a light, skilled position; and a drywall hanger, a very heavy, unskilled position. (Tr. 30, 85).

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations such as inspector (100 jobs regionally, 100,000 jobs nationally), document preparer (75 jobs regionally, 60,000 jobs nationally), and order clerk (75 jobs regionally, 75,000 jobs nationally). (Tr. 31, 89).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

In her Statement of Errors, plaintiff argues that the ALJ erred by: (1) failing to analyze whether her cervical spine impairment equaled Listing 1.04A, 20 C.F.R. Pt. 404, Subpt. P, App. 1; and (2) improperly determining her RFC by (a) substituting his opinion for the opinion of one-

time examining physician Dr. Bruce F. Siegel, D.O., and (2) finding that plaintiff could perform frequent handling and fingering with her right upper extremity. (Doc. 14).

### 1. The ALJ's Step Three analysis

The Commissioner is required to consider plaintiff's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). The Listings set forth certain impairments which are presumed to be of sufficient severity to prevent the performance of any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). If plaintiff suffers from an impairment which meets or equals one set forth in the Listings, the Commissioner renders a finding of disability without consideration of plaintiff's age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981). Plaintiff's impairment need not precisely meet the criteria of the Listings in order to obtain benefits. If plaintiff's impairment or combination of impairments is medically equivalent to one in the Listings, disability is presumed and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). To determine medical equivalence, the Commissioner compares the available medical evidence with the requirements for listed impairments to determine if a claimant's condition is equivalent to a listed impairment. *Staggs v. Astrue*, No. 2:09-CV-00097, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011)).

Listing 1.04 covers disorders of the spine, including degenerative disc disease. In order to satisfy § 1.04A, the spinal condition "must result in compromise of a nerve root . . . or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Additionally, there must be:

A. Evidence of nerve root compression characterized by neuro-anatomic

6

distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.* Thus, to satisfy Listing 1.04A, plaintiff must demonstrate: (1) nerve root compression, (2) "neuro-anatomic distribution of pain," (3) "limitation of motion of the spine," (4) "motor loss (atrophy with associated muscle weakness or muscle weakness)" and (5) "sensory or reflex loss." *Id.* In addition, the regulations require that the abnormal findings must be established over a period of time: "Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00D. Plaintiff has the burden of demonstrating that she meets or equals a listed impairment. *See Kirby v. Commissioner of Social Security Administration*, 37 F. App'x 182, 183 (6th Cir. 2002).

The Sixth Circuit does not impose a heightened articulation standard on the ALJ at step three of the sequential evaluation process. The ALJ is not required "to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis,' or to discuss every single impairment." *Staggs*, 2011 WL 3444014, at *3 (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). *See also Wolte-Rotondo v. Commr. of Soc. Sec.*, No. CV 15-13093, 2016 WL 8115400, at *8-9 (E.D. Mich. May 12, 2016) (Report and Recommendation), *adopted,* 2016 WL 4087232 (E.D. Mich. Aug. 2, 2016). Further, the ALJ need not include the explanation and support for the step three finding entirely within the section of the written decision devoted specifically to the step three analysis. *Staggs,* 2011 WL 3444014, at *3 (the Sixth Circuit in *Bledsoe,* 165 F. App'x at 411, implicitly

sanctioned "the practice of searching the ALJ's entire decision for statements supporting his step three analysis"); *see also Wolte-Rotondo,* 2016 WL 8115400, at *8 (same).

Here, the ALJ considered at step three of the sequential evaluation process whether plaintiff's cervical disc disease met or equaled Listing 1.04A and found that it did not satisfy the severity requirements of the listing because plaintiff "does not have evidence of nerve root compression or the requisite neurological deficits." (Tr. 21). Plaintiff alleges the ALJ's finding is in error because the record includes the following evidence of all the requirements of Listing 1.04: (1) imaging evidence of herniated cervical discs with extruded material and spinal cord and nerve root impingement (Tr. 371); documented complaints of radiculopathy in plaintiff's neck and dominant right arm to her fingers (Tr. 58-60, 73-75, 78, 296-378, 393-420, 437-56, 490-98, 510-13); limited range of motion documented by "[v]irtually every physician who examined" plaintiff (Tr. 296-378, 393-420, 437-56, 490-98, 510-13); muscle atrophy documented by examining physician Dr. Siegel (Tr. 510-13); routine findings of muscle weakness in the right side of the neck and right upper extremity (Tr. 296-378, 393-420, 437-56, 490-98); and sensory loss in the right upper extremity (Tr. 379-92, 510-13). (Doc. 14 at 6-7).

The medical evidence of record, which the ALJ exhaustively reviewed, does not support plaintiff's claim of error. Instead, the evidence demonstrates that the ALJ's step three finding is supported by substantial evidence. In his written decision, the ALJ examined the medical evidence related to plaintiff's cervical and lumbar impairments beginning in June 2010, at which time plaintiff was involved in a motor vehicle collision. (Tr. 22-26). Plaintiff was diagnosed with a neck sprain at the emergency room following the accident, prescribed Flexeril and Vicodin, and discharged with instructions to follow up with her primary care provider. (Tr. 22,

citing Tr. 300). Plaintiff attended physical therapy after the June 2010 accident for continued complaints of neck pain, right hand pain, and related dysfunction. (Tr. 23, citing Tr. 332). Though her physical therapist noted some improvement in mid-September 2010 (Tr. 361), plaintiff continued to report neck pain and an October 2010 MRI of the cervical spine disclosed a right paracentral disc protrusion at C5-6 with mild cord impingement, possible impingement on the right C-6 nerve root, and a small disc herniation at C6-7 with no evidence of cord or root impingement (Tr. 371). (Tr. 23). Plaintiff presented at the emergency room in November 2010 with ongoing complaints of neck pain, but her neurological examination was normal. (Tr. 380-81). Plaintiff had a neurological consultation at University Hospital Clinic in December 2010. (Tr. 385-89). Her October 2010 MRI findings were characterized as "moderate," the neurological findings were reported as normal, and reported weakness was linked to pain rather than neurological dysfunction. (Tr. 23, citing Tr. 389). Given the moderate imaging findings and lack of radiculopathic findings, surgery was not recommended. (*Id.*, citing Tr. 388). Instead, the plan was for plaintiff to undergo an EMG and receive epidural injections. (*Id.*). Dr. Robert Klickovich, M.D., a pain management specialist at Physicians Healthsource, Inc., assessed plaintiff in February 2011 and made findings of a positive Spurling bilaterally[3] but also of normal strength, sensation and reflexes. (*Id.*, citing Tr. 427). He ordered an electrodiagnostic study, which disclosed evidence of mild carpal tunnel syndrome at the wrist but no evidence of cervical radiculopathy or plexopathy. (Tr. 24, citing Tr. 434).

---

[3] The Spurling test is an "[e]valuation for cervical nerve root impingement in which the patient extends the neck and rotates and laterally bends the head toward the symptomatic side; an axial compression force is then applied by the examiner through the top of the patient's head; the test is considered positive when the maneuver elicits the typical radicular arm pain." http://medical-dictionary.thefreedictionary.com/Spurling+test.

Dr. Sung Min, M.D., a physician at Western Hills Interventional Pain Specialists, began treating plaintiff in April 2011 for right cervical and upper extremity issues. (Tr. 24; 484). Dr. Min's neurological findings included decreased sensation on the right at C5-C6, essentially intact reflexes except for a ½ right radial reflex, and a guarded gait. (Tr. 24; Tr. 487). On physical examination, Dr. Min found reduced range of motion, a strength deficit on the right, and radicular symptoms into the right upper extremity. (*Id*.). Dr. Min diagnosed cervical disc syndrome, cervical radiculopathy, and myofascial pain/trigger point/adhesive tissue changes. (Tr. 24, citing Tr. 488). Dr. Min treated plaintiff with injections, which brought some short-term relief, and medication. (Tr. 24; Tr. 458-83). In October 2011, plaintiff reported neck and right shoulder pain but denied right upper extremity pain, which she reported occurred only when she was sleeping. (Tr. 24, citing Tr. 470). Examination findings included no focal motor deficits, no sensory deficits, and no gait abnormality. (*Id*., citing Tr. 470). Plaintiff reported that the medication helped her to perform activities of daily living and therefore improved her quality of life and helped control her "moderate to severe" pain. (Tr. 24; Tr. 471). Plaintiff continued to report that the medications helped with the pain and helped her to function with her daily activities, and there was no change in her examination findings of pain with range of motion and palpation of the cervical spine in December 2011 (Tr. 468), January 2012 (Tr. 467), and March 2012 (Tr. 466). In May and July of 2012, plaintiff began reporting that her pain medications were not as effective but no significant change was reported. (Tr. 24; *see* Tr. 464, 465). In August 2012, she complained of neck and hip pain that was "constant lately" and she reported that the medications were not helping anymore. (Tr. 24, citing Tr. 463). Dr. Min reported that pain worsened on extension but he continued to report no focal deficits. (Tr. 463). The plan was

to continue with medical management and refer plaintiff to a surgeon when she had insurance. (Tr. 24, citing Tr. 463). Dr. Min continued to report examination findings of tenderness, pain on extension, and no focal deficits or spasticity through October 2012. (Tr. 462).

Consultative examining physician Dr. Philip Swedberg, M.D., examined plaintiff for disability purposes in June 2013. (Tr. 25, citing Tr. 490-98). Plaintiff reported she had last been seen for pain management treatment in April and that her neck pain persisted. (*Id.*, citing Tr. 490). Plaintiff reported that she had pain radiating to the right shoulder at the time of the examination and that the pain occasionally radiated down the right arm, and frequent head movements or prolonged exertional activity exacerbated the pain. (*Id.*). On physical examination, Dr. Swedberg found that plaintiff ambulated with an antalgic gait; her strength was 5/5 throughout; she exhibited decreased range of motion in her right hip, lumbosacral spine, cervical spine and right shoulder with no signs of muscle atrophy, loss of manipulative ability, diminished reflexes, muscle weakness, loss of sensation, or signs of joint abnormality; there was no evidence of radiculopathy; and cervical spine x-rays showed mild scoliosis with convexity to the left centered at the upper thoracic level, moderate disc narrowing with mild spurring at the anterior and posterior disc margins at C5-6, and mild neural foraminal narrowing bilaterally at C3-4 and C5-6. (*Id.*, citing Tr. 492; 490-498).

After a gap in treatment, plaintiff began treating with Dr. Amar Bhati, M.D., in September 2014 for complaints of back and neck pain. (*Id.*, citing Tr. 503). Plaintiff informed Dr. Bhati she had recently been terminated from Western Hills Interventional Pain Specialists. (*Id.*). Dr. Bhati's findings included negative bilateral straight leg raise test, normal range of motion throughout the musculoskeletal system, no paraspinal tenderness, normal muscle tone,

and no neurological deficits on examination. (Tr. 25, citing Tr. 504). He diagnosed back pain, neck pain, and anxiety. (*Id.*, citing Tr. 505). In November 2014, plaintiff's history showed chronic intermittent right-sided neck pain that could radiate down to the right knee, she reported that her pain medications and injections provided "mild relief," and she felt that her psychotropic medication, Celexa, caused headaches. (Tr. 523). Except for a finding of mild right upper extremity weakness in November 2014, Dr. Bhati's physical examination findings from October and November 2014 were essentially normal. (Tr. 25-26, citing Tr. 500-02, 523-24). In a letter dated November 7, 2014, Dr. Bhati wrote that he did not have enough information to complete plaintiff's "request for disability" as she had been non-compliant with instructions from his office, including a referral to a pain specialist. (Tr. 499). Dr. Bhati asked that plaintiff make an appointment at his office for a full evaluation and indicated he was attaching her medical records. (*Id.*). Dr. Bhati next saw plaintiff in March 2015 for headaches, anxiety and depression. (Tr. 518). Dr. Bhati noted that plaintiff admittedly had been noncompliant with Wellbutrin, which she had taken only once daily instead of twice daily as prescribed. (Tr. 26, citing Tr. 518). Neurological findings continued to be normal. (*Id.*, citing Tr. 520). The record does not include a disability assessment by Dr. Bhati and though he referred her to a pain clinic, there are no records from a referral. (*Id.*; Tr. 519).

Consultative examining physician Dr. Bruce Siegel, D.O., examined plaintiff at the request of her counsel in April 2015. (Tr. 26, citing Tr. 510-13). Dr. Siegel summarized plaintiff's medical treatment through April 2013 but, as the ALJ noted, he did not mention Dr. Swedberg's "unremarkable examination report or Dr. Bhati's benign findings and treatment." (*Id.*). Plaintiff complained to Dr. Swedberg of ongoing neck pain, stiffness, and limited

mobility; reduced daily activities due to pain and right arm dysfunction, and intermittent headaches. (*Id.*, citing Tr. 511). She also reported paresthesia of her right arm and hand with prolonged positioning/movement of the neck and fine and gross manipulation difficulties, neither of which she had reported to Dr. Bhati. (*Id.*, citing Tr. 511-12). Plaintiff reported that she was taking only over-the-counter medication for her physical impairments currently. (*Id.*, citing Tr. 512). Dr. Siegel made physical examination findings of diminished range of motion at the neck with bilateral paracervical muscle atrophy, bilateral muscle guarding, decreased cervical lordosis, forward head posturing, and neck and shoulder tenderness. (*Id.*, citing Tr. 512). Dr. Siegel made clinical findings of reduced deep tendon reflexes at both arms, mild dysesthesia at several fingers of the right hand, and increased neck pain in performing right shoulder movement studies. (Tr. 26, citing Tr. 512). Motor strength was intact in all extremities. (*Id.*). Dr. Siegel reported that plaintiff continued to suffer with chronic neck pain, limited mobility and endurance, and right upper extremity paresthesia traceable to her June 2010 automobile accident. (Tr. 512). He reported that she suffers from cervical spondylosis with cervical disc syndrome and cervical radiculopathy, and a right disc herniation at the C6-7 level. (*Id.*).

Initially, the medical evidence of record summarized by the ALJ and set forth above supports the ALJ's finding that there is no objective evidence of nerve root compression. Contrary to plaintiff's argument, conclusive imaging evidence of nerve root compression is lacking. (*See* Doc. 14 at 6). Plaintiff alleges that the October 2010 MRI showed "herniated discs at C5-6 and C6-7 with extruded disc material at each level that impinged upon the spinal cord and the C6 nerve root." (*Id.*, citing Tr. 371). This is not accurate. The MRI showed only *possible* nerve root impingement (or compression) at C-6. (Tr. 371). The actual finding at this

level was a moderate size disc herniation "with extruded disc material minimally flattening [] the right anterior aspect of the spinal cord and possibly impinging on the anterior right C6 nerve root" and with "[n]o abnormal signal in the cord." (*Id.*). Thus, the MRI constitutes evidence of "compromise . . . of the spinal cord" and satisfies the Listing requirement that the claimant's degenerative disc disease result "in compromise of a nerve root . . . *or* the spinal cord." Listing 1.04, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (emphasis added). However, it does not constitute evidence of nerve root compression. (*See also* Tr. 475, 7/19/11 Western Hills Interventional Pain Specialists treatment record: "Medical records including imaging has [sic] revealed no evidence of . . . nerve root compression.").

The medical evidence of record likewise supports the ALJ's finding that objective evidence of the neurological deficits required to satisfy Listing 1.04A is lacking. To satisfy the requirement that there be "neuro-anatomic distribution of pain," 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A, plaintiff alleges that the record documents complaints of radiculopathy in her neck and dominant right arm to her fingers. (Doc. 14 at 6, citing Tr. 58-60, 73-75, 78, 296-378, 392-420, 437-56, 490-98, 510-13).[4] The record does show that plaintiff complained of pain radiating to her shoulder and occasionally into or down her arm, but she did not consistently make these complaints during the period of alleged disability. (*See* Tr. 304- plaintiff complained of pain in her neck that radiated down her right upper arm and shoulder when she presented to emergency room after her June 2010 motor vehicle accident; Tr. 420- plaintiff reported during

---

[4] Some of the records plaintiff cites are duplicates. (*See*, e.g., Tr. 349-50/Tr. 377-78). Other citations are not to the medical record but to plaintiff's testimony at the ALJ hearing. (Tr. 58-60, 78). Plaintiff testified that her pain runs down her arm to the tips of her fingers and she characterized the pain typically as at a level of 7 or 8 out of 10 on an analog pain scale, unless she is under pain management. (Tr. 78).

September 2010 hospital clinic visit that neck pain "used to radiate down the RUE [right upper extremity], but now only stays in the neck"; Tr. 331-61, 372-78- plaintiff voiced some complaints of radiculopathy into the right upper extremity (Tr. 355), and later into the left upper extremity (Tr. 349) at 8/10 -11/10 physical therapy sessions). Plaintiff denied "any radiation in pain" during a December 2010 University Hospital medical clinic visit. (Tr. 386). It does not appear that she complained of radiating pain again until October 2012, when she stated during a Western Hills Interventional Pain Specialists visit that her medications were no longer helping and pain was radiating down her right arm. (Tr. 462). Dr. Swedberg reported in his June 2013 report that plaintiff presently had pain radiating to the right shoulder and she occasionally reported radiation of pain down the right arm. (Tr. 490). Plaintiff requested that Dr. Bhati fill out disability paperwork in November 2014 for chronic, intermittent right neck pain that occasionally radiated to the right knee which she claimed she had experienced since her June 2010 accident. (Tr. 523). However, it does not appear that plaintiff otherwise complained of radiating pain to treating physician Dr. Bhati during office visits in 2014 and March 2015. (Tr. 500-07, 518-559).

The ALJ found that despite occasional reports of radiculopathy in the record, objective evidence documenting cervical radiculopathy was lacking. (Tr. 28). The ALJ noted that electrodiagnostic testing had demonstrated evidence only of mild carpal tunnel syndrome at the right wrist and did not disclose cervical radiculopathy or plexopathy. (*Id.*, citing Tr. 434). Further, examining and treating physicians generally did not report radiculopathy in their physical examination findings. Dr. Min initially assessed plaintiff with cervical disc syndrome and cervical radiculopathy at plaintiff's initial evaluation in April 2011 (Tr. 24, citing Tr. 488),

15

but the neurological findings at subsequent office visits were essentially normal. (Tr. 24; *see* Tr. 458-72). In fact, the treatment record dated July 19, 2011 specifies: "The pain is non radicular." (Tr. 475). Dr. Swedberg reported in June 2013 that there "was no evidence of radiculopathy" on examination of plaintiff and he diagnosed her with "[n]eck pain without radiculopathy." (Tr. 25, citing Tr. 492). Treating physician Dr. Bhati made what the ALJ characterized as "surprisingly unremarkable" findings which included normal range of motion throughout the musculoskeletal system, no observed neurological deficits, no evidence of sensory deficits, and no muscle weakness. (Tr. 25, citing Tr. 500-505; *see also* Tr. 523-31). Finally, although Dr. Siegel opined that plaintiff "suffers with cervical spondylosis with cervical disc syndrome, with cervical radiculopathy," the ALJ reasonably discounted Dr. Siegel's report as inconsistent with plaintiff's conservative treatment and the "relatively benign findings" in the medical record, including those made by Dr. Swedberg in his consultative examination and the findings made by treating physician Dr. Bhati over an extended time period. (Tr. 29-30). Considering these findings in the context of the record as a whole, the ALJ was justified in concluding that the medical record did not establish evidence of nerve root compression characterized by neuro-anatomic distribution of pain during the period of alleged disability.

As to the second element, plaintiff contends that "[v]irtually every physician who examined" her documented "limitation [of] range of motion." (Doc. 14 at 6, citing Tr. 296-378, 393-420, 437-56, 490-98, 510-13). It appears that treating physician Dr. Bhati did not make this finding. (*See* Tr, 25-26, citing Tr. 503-04, 523-24). Dr. Bhati noted only subjective pain complaints during range of motion studies in November 2014. (Tr. 25, citing Tr. 524). The

Commissioner does not dispute that all other physicians' examination findings included limited motion of the spine.

Nonetheless, findings as to the remaining elements of the Listing - "motor loss (atrophy with associated muscle weakness or muscle weakness)" and "sensory or reflex loss" - are largely absent from the examining and treating physicians' reports. Plaintiff notes only one finding of muscle atrophy, which was a finding of bilateral paracervical muscle atrophy made by Dr. Siegel in his report of April 2015. (Doc. 14 at 6, citing Tr. 511). The ALJ acknowledged Dr. Siegel's finding. (Tr. 26). However, the ALJ noted that Dr. Bhati had made consistently normal findings, which did not include atrophy. (Tr. 25, citing Tr. 500-05, 523-24). The ALJ noted that Dr. Bhati's findings from plaintiff's March 2015 office visit, which occurred less than one month before Dr. Siegel's exam, remained essentially unchanged from prior exam findings of only mild right upper extremity weakness with no evidence of sensory deficits or other abnormalities. (Tr. 25-26, citing Tr. 523-24, 525). The ALJ also noted that Dr. Swedberg had found no evidence of atrophy or muscle weakness on neurological examination in June 2013. (Tr. 25, citing Tr. 490-498; *see* Tr. 491- "On neurological examination, there is no evidence of muscle weakness or atrophy[.]"). Dr. Swedberg reported that except for diminished range of motion of the cervical spine, right shoulder, right hip and lumbosacral spine and antalgic gait, the "rest of the musculoskeletal and neuromuscular examination of both the upper and lower extremities was entirely normal." (Tr. 492). The ALJ was not obligated to find this element of Listing 1.04A was satisfied based on Dr. Siegel's isolated finding made over the course of more than four years of treatment and examinations. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, §

1.00D ("Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation.").

Nor does the evidence establish sensory or reflex loss that satisfies the final element of Listing 1.04A. Plaintiff alleges that Drs. Taylor and Siegel found diminished sensation in the right upper extremity. (Doc. 14 at 6, citing Tr. 379-92, 510-13). This is not entirely accurate. When answering a questionnaire completed by a nurse on intake at the University Hospital Clinic in December 2010, plaintiff reported numbness, tingling and weakness in her right arm and pain in her neck occurring primarily at night since her automobile accident. (Tr. 386). However, the examining physician found sensation to light touch and pain was normal on examination. (Tr. 387; Tr. 388- "sensory exam normal"). Dr. Siegel reported only that "[m]ild dysesthesia is noted in the "index, middle and pinkie finger of the right hand." (Tr. 512). Prior to Dr. Siegel's examination, in March and November of 2012, Western Hills Interventional Pain Specialists reported no "focal motor or sensory deficits." (Tr. 460, 466). Dr. Swedberg reported on examination in June 2013 that "all sensory modalities were well-preserved including light touch and pinprick." (Tr. 491-92). Dr. Bhati found no evidence of sensory deficits. (Tr. 25, citing Tr. 524). In view of the overwhelming evidence of no abnormalities in this area, the ALJ was not required to rely on Dr. Siegel's isolated finding to determine that the sensory loss element of Listing 1.04A was satisfied.

Thus, plaintiff has not shown that the ALJ erred by finding her cervical impairment did not satisfy Listing 1.04A based on an absence of evidence of nerve root compression and of the required neurological deficits. To the extent plaintiff argues that the ALJ's analysis was insufficient, or that he was required to explain his conclusions in greater detail, plaintiff's

argument fails. The ALJ's analysis of the evidence is thorough and well-documented and enables the Court to engage in a meaningful review of his decision. That evidence substantially supports the ALJ's finding that plaintiff's impairments did not meet Listing 1.04A. The ALJ was not required to find plaintiff's impairment met or equaled the listing, despite findings documenting the presence of some elements of the listing, in light of the significant and unexplained gaps in the medical evidence; the unremarkable findings made by consultative examining physician Dr. Swedberg in June 2013 (Tr. 25, citing Tr. 490-97) and treating physician Dr. Bhati between September 2014 and March 2015 (Tr. 25-26, citing Tr. 500-05, 523-25); and the ALJ's decision to give reduced weight to the findings of examining physician Dr. Siegel.[5]

Plaintiff's first assignment of error should be overruled.

## 2. The ALJ's RFC finding

Plaintiff alleges as her second assignment of error that the ALJ's RFC finding is not supported by substantial evidence. (Doc. 14 at 8-10). First, plaintiff argues that in formulating the RFC finding, the ALJ improperly gave "limited weight" to Dr. Siegel's opinion that plaintiff was restricted to less than sedentary work and created a "lay" RFC finding, unsupported by any expert medical evidence, that plaintiff could perform sedentary work. (*Id.* at 8-9). Plaintiff indicates that the ALJ was bound to accept Dr. Siegel's medical opinion because Dr. Siegel was

---

[5] Plaintiff was not required to present additional evidence of positive supine and sitting leg raise test results to satisfy Listing 1.04A in this case as the Commissioner argues. As plaintiff correctly notes in her reply, these objective findings are required to satisfy Listing 1.04 only when the claimant's impairment involves the lumbar spine. (Doc. 22 at 2, citing Listing 1.04A). Plaintiff alleges she suffers an impairment of the cervical spine that satisfies the listing. She was not required to produce evidence of positive straight leg test results, and the ALJ did not make a finding to this effect. Plaintiff's argument nonetheless fails based on her failure to satisfy the applicable elements of Listing 1.04A.

the only physician to offer an RFC assessment who examined plaintiff and reviewed all of the medical records, and his assessment is purportedly supported by evidence of nerve root damage that satisfies the Listing. (Doc. 22 at 5-6). Further, plaintiff argues that the ALJ's RFC finding restricting her to "frequent" handling and fingering with the right upper extremity is not supported by substantial evidence. (Doc. 14 at 9). Plaintiff contends that the medical findings support more restrictive handling and fingering limitations than those assessed by the ALJ, including Dr. Siegel's opinion that plaintiff was restricted to handling/fingering for only 5-10% of an 8-hour day; Dr. Swedberg's finding that plaintiff had markedly decreased right-hand grip strength; Dr. Bhati's finding of right-sided weakness; and the imaging and EMG findings.

The Commissioner alleges that the ALJ's RFC finding is supported by substantial evidence. (Doc. 19 at 7-17). The Commissioner argues that the ALJ took into account physical examination findings that supported the RFC finding, which included relatively benign and unremarkable findings by several physicians and negative medical examination findings made in 2010, 2011, 2012 and 2014. (*Id*. at 9-13). The Commissioner also contends that the ALJ properly considered the medical opinions of record, including those that assessed plaintiff as capable of performing more than sedentary work, and reasonably discounted Dr. Siegel's opinion in accordance with the regulatory factors. (*Id*. at 13-14). The Commissioner argues that the ALJ properly resolved conflicts in the medical opinions as was his prerogative. (*Id*. at 15, citing 20 C.F.R. § 404.1527(c)(1); *Jenkins v. Chater*, 76 F.3d 231, 233 (6th Cir. 1996)).

The Social Security regulations vest the ALJ with responsibility "for reviewing the evidence and making findings of fact and conclusions of law." 20 C.F.R. §§ 404.1527(e)(2),

416.927(e)(2).[6] "Physicians render opinions on a claimant's RFC, but the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner." *Profitt v. Comm'r. of Soc. Sec.*, No. 1:13-cv-679, 2014 WL 7660138, at *6 (S.D. Ohio Dec. 12, 2014) (Report and Recommendation), *adopted,* No. 1:13-cv-679, 2015 WL 248052 (S.D. Ohio Jan. 20, 2015) (quoting *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 578 (6th Cir. 2009)). *See also* 20 C.F.R. §§ 404.1546(c), 416.946(c) (the responsibility for assessing a claimant's RFC lies with the ALJ). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). *See also Moore v. Astrue*, No. 07-204, 2008 WL 2051019, at *5-6 (E.D. Ky. May 12, 2008) (the ALJ is responsible for assessing the claimant's RFC by examining all the evidence in the record) (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)); *Bingaman v. Comm'r of Soc. Sec.,* 186 F. App'x 642, 647 (6th Cir. 2006)). *See also Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004) (Court of Appeals stated that the RFC determination, which is part of the disability evaluation, is expressly reserved for the Commissioner). An ALJ is not required to adopt precise limitations offered by a single medical source in assessing a claimant's RFC. *Ford*, 114 F. App'x 194 (affirming district court decision upholding ALJ's finding of RFC for light work with restrictions, despite absence of a medical source opinion assessing plaintiff as capable of light work). However, the "ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v.*

---

[6] Sections 404.1527 and 416.927 were amended effective March 27, 2017, but the prior versions of the regulations apply here.

*Comm'r of Soc. Sec.,* No. 1:07-cv-51, 2008 WL 1733181, at *13 (S.D. Ohio April 14, 2008) (citations omitted); *Hammock v. Comm'r of Soc. Sec.*, No. 1:12-cv-250, 2013 WL 1721943, at *8 (S.D. Ohio Apr. 22, 2013) (Report and Recommendation), *adopted,* 2013 WL 4080714 (S.D. Ohio Aug. 13, 2013).

Plaintiff has not shown that the ALJ erred in fashioning the RFC finding by (1) discounting Dr. Siegel's opinions, and (2) specifically assessing her as capable of performing frequent handling and fingering. In finding that plaintiff could perform a limited range of sedentary work, the ALJ thoroughly reviewed, and noted inconsistencies in, the medical evidence of record. (Tr. 22-26). The ALJ noted findings of mild cord impingement at C5-C6 (Tr. 371); positive Spurling bilaterally in February 2011 (Tr. 427); some decreased sensation, reduced range of motion, decreased strength on the right, and cervical radiculopathy by Dr. Min in April 2011 (Tr. 488); and Dr. Siegel's clinical findings of paracervical atrophy, bilateral muscle guarding, decreased cervical lordosis, forward head posturing, neck and shoulder tenderness, reduced deep tendon reflexes at both arms, mild dysesthesia at several fingers on the right hand, and neck pain with right shoulder movement studies. (Tr. 512). The ALJ also reviewed negative neck and shoulder findings, such as the absence of muscle atrophy, spasm, rigidity, and tremor; diagnostic imaging findings that were not consistent with severe neck and shoulder pain; and the lack of electrodiagnostic evidence to verify the severity of alleged radicular symptoms. (Tr. 28). The ALJ noted that the evidence demonstrated only mild carpal tunnel syndrome at the right wrist, which was disproportionate to plaintiff's alleged near total inability to use her right arm. (*Id.*, citing Tr. 434).

The ALJ also found that examining physicians other than Dr. Siegel have consistently failed to describe neurological or musculoskeletal findings consistent with the severe symptoms described by plaintiff, and he explained his reasons for the weight given the various medical opinions of record. (Tr. 29-30). The ALJ gave reduced weight to the assessment of state agency reviewing physician Dr. Gerald Klyop, M.D., assessing plaintiff as capable of performing a range of light work because the ALJ found that greater restrictions were required. (Tr. 29, citing Tr. 140-42). The ALJ gave only "some weight" to Dr. Swedberg's opinions that plaintiff could perform a "mild to moderate" amount of exertional and postural activities and a restricted amount of overhead reaching because Dr. Swedberg provided no function-by-function analysis and the ALJ found his conclusion to be vague. (*Id*., citing Tr. 490-98). The ALJ gave "little weight" to Dr. Siegel's April 2015 assessment and narrative report for reasons the ALJ thoroughly explained. The ALJ relied on several of the regulatory factors in finding that the restrictions assessed by Dr. Siegel underestimated plaintiff's functional capacity. (Tr. 29-30, citing Tr. 510-13, 514-16). The ALJ found that although the record supported "extensive exertional, postural, and manipulative restrictions," the "extreme" manipulative and other restrictions Dr. Siegel assessed were inconsistent with the medical record, which consisted of only conservative treatment and "relatively benign findings"; Dr. Siegel did not provide objective support for the restrictions he assessed; Dr. Siegel did not take into account Dr. Bhati's concerns regarding poor compliance with pain treatment referrals, as well as the treating physician's lack of significant medical findings over an extended period of time, or Dr. Swedberg's "unremarkable clinical findings" based on a very similar examination; and plaintiff had reported to Dr. Siegel drastic limitations and symptoms including "severe manipulative

23

difficulties," which she had not reported to her treating physician Dr. Bhati, in an apparent effort to improve her chances at obtaining benefits. (Tr. 29-30). It was within the ALJ's authority to resolve conflicts in the evidence and among the various medical opinions of record in this manner. *Jenkins*, 76 F.3d at 233. Further, to the extent the ALJ found plaintiff had exaggerated her symptoms, the ALJ was not required to incorporate restrictions into the RFC to accommodate her claimed limitations. *Cf. Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (the ALJ is required to incorporate into the hypothetical posed to the VE only those limitations deemed credible).

Thus, plaintiff has not shown that the ALJ exceeded his authority or misconstrued the record in fashioning the RFC. The ALJ properly resolved conflicts in the medical evidence and weighed the various medical opinions in making his RFC determination. Plaintiff has shown no error in this regard. Plaintiff's second assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be **CLOSED** on the docket of the Court.

Date: 8/11/17

Karen L. Litkovitz
United States Magistrate Judge

24

| | |
|---|---|
| DAWN R. EVANS, | Case No. 1:16-cv-622 |
| Plaintiff, | Dlott, J. |
| | Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF | |
| SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).